J-S05045-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROMAN MURAT AND RANDI MURAT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STATESIDE BUILDERS, LLC, AND | : | |
| DANIEL BEEBIE | : | |
| | : | No. 1642 EDA 2025 |
| Appellants | : | |

Appeal from the Judgment Entered August 27, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2024-04002

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JUNE 18, 2026**

Stateside Builders, LLC ("Stateside"), and Daniel Beebie (together, "Appellants") appeal from an award of damages against them and in favor of Roman and Randi Murat (together, "Appellees") in the amount of $1,143,619.93. Appellants challenge the trial court's: (1) finding of waiver of Appellants' post-trial motion claims for failure to file a court-ordered brief; (2) denial of their motion for reconsideration of that post-trial waiver finding; (3) award of damages against Beebie insofar as the evidence allegedly showed Stateside was solely responsible for Appellees' damages; (4) alleged failure to apply the "gist of the action" doctrine; (5) failure to modify the verdict where it was allegedly not clear from which causes of action Appellees' damages

_____

[*] Retired Senior Judge assigned to the Superior Court.

arose; and (6) failure to grant a motion for a continuance of the damages trial.

We affirm.

The trial court set forth the factual and procedural history of this case as follows:

> This case arises out of a contract dispute relating to a private residence located at 3410 [Paper Mill] Road, Huntingdon Valley, Pennsylvania ([]the ["]Property"). [Appellees] entered into a contract with [Appellants] on or about October 13, 2021, for the construction of a new, custom, luxury home (the "Contract"). Beyond serving as the general contractor for the project and being responsible for hiring and supervising subcontractors, [Appellants] also ended up performing certain construction tasks themselves and did so in a substandard manner. Prior to entering into the Contract, Mr. Murat knew Beebie as a client of the [Appellees]' watch and jewelry store for approximately three [] years.
>
> During the Contract discussions, Beebie suggested that [Appellees] make deposit payments toward project costs and separately purchase some materials, including lumber, while the parties finalized their agreement and construction loan financing. [Appellees] began looking for a bank to finance a construction loan. In advance of obtaining the loan, [Appellees] paid more than $700,000[.00] directly to Stateside, from which [Appellants] could draft funds for material and construction expenses, including tree removal, site work, foundation, and material deposits. The parties agreed that this advance payment from [Appellees] would act as a loan for [Appellants] to pay forward to the next line items and that once the construction loan paid out, [Appellants] would return those funds to [Appellees].
>
> The parties finally executed the Contract, which reflected a budget of approximately $2.434 million, including a construction loan from the bank of approximately $1.8 million with the remaining balance to be paid directly by [Appellees]. According to the Contract, the construction was supposed to be complete within seventy-eight [] weeks, by approximately April 12, 2023.
>
> Once construction began, the project became riddled with issues, including but not limited to: timeline delays, periods of

shutdowns, faulty work that failed to follow approved plans, damage to materials and the Property due to [Appellants]' failure to properly protect the work in progress from exposure to the elements, failure to properly obtain necessary permits[,] and approvals from the township, failure to pay subcontractors, and mismanagement of project finances overall. Years of project setbacks, poor performance, and disappointments ultimately led to [Appellees]' termination of the Contract in March of 2024—just under a year past the expected completion date. As it was clear to [Appellees] that [Appellants] had not properly cared for or executed the project, [Appellees] proceeded to hire a second contractor to address the quality issues that had arisen from [Appellants]' work, and to bring the project to completion.

At the point of termination, [Appellees] asked Beebie to provide a reconciliation accounting of money spent and money received (the "Accounting"). Beebie provided the Accounting in the form of a Google Sheets file via email. The Accounting reflected a total dollar amount [Appellees] paid to [Appellants] of $1.53 million. According to the Accounting, Beebie asserted that, as of the point of termination, [Appellees] had overpaid by an alleged $126,065.09. After discussing different elements of the Accounting, Beebie agreed to return $150,000.00 to [Appellees] by April 4, 2024. However, Beebie never issued that refund.

Beyond the $150,000.00 overpayment originally identified, [Appellees] discovered that the bank paid [Appellants] for work that was clearly not finished and [Appellees] sought repayment for that incomplete work. Based on [Appellees]' calculations, [Appellants] were overpaid approximately $660,000.00.[2]

> [2] In addition to failing to refund the overpaid amount to [Appellees], Beebie failed to fulfill his promise to pay an outstanding $200,000.00 owed to one of the subcontractors—Foundation Building Materials, LLC []—which resulted in a $200,000.00 lien on the Property.

Separately, [Appellees] incurred expenses related to the work that [Appellants] negligently performed that had to be redone by a second contractor following termination of the Contract. According to the invoice from [Appellees]' second contractor, the necessary rework ultimately cost approximately $484,000.00.

Finally, [Appellees] claimed a third category of damages associated with the costs incurred due to the overall delay in

completion of the project. In total, [Appellees] sought to recover approximately $1.5 million in damages.

A detailed review of the procedural history reflects a pattern of [Appellants]' failure to meet their litigation obligations. At every turn, [Appellants] were at least a day late and more than a dollar short.

[Appellees] filed a complaint on June 20, 2024, asserting the following causes of action: [(1)] negligence; [(2)] violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL); [(3)] breach of contract; [(4)] unjust enrichment; [(5)] fraud; [(6)] conversion; [(7)] civil conspiracy; and [(8)] constructive trust. That same day, [Appellees] filed a motion for emergency preliminary injunctive relief ("Emergency Motion"), seeking to enjoin [Appellants] from disposing of assets so as to become judgment proof.

On June 21, 2024, the court issued a rule to show cause on [Appellees]' Emergency Motion (the "Rule"), directing Stateside to file an answer within seven [] days and ordering that the parties file and serve injunction briefs on or before July 1, 2024. Additionally, the Rule scheduled a hearing on an emergent basis for July 2, 2024. [Appellees] timely filed a memorandum of law in support of the Emergency Motion on July 1, 2024. [Appellants] failed to file anything.

The court held the hearing on the Emergency Motion as scheduled. [Appellants] failed to appear. The court issued a decision and order on July 3, 2024, granting the Emergency Motion in part, narrowly tailoring the relief by stating that if [Appellants] were to sell, transfer, or otherwise dispose of any real property, [Appellants] were to place the net proceeds into a court-supervised escrow account up to $350,000[.00]. The order also directed [Appellees] to deposit a bond with the court and/or its duly authorized agent in the amount of $1,000[.00] pursuant to [Pennsylvania Rule of Civil Procedure] 1531(b). [Appellees] complied by filing the required amount with the Prothonotary on July 15, 2024.

Next, as a result of [Appellants]' failure to respond to the complaint, [Appellees] obtained default judgments on July 30, 2024, and July 31, 2024, against Stateside Builders, LLC and Daniel Beebie, respectively. In light of the default judgments, [Appellants] were deemed liable to [Appellees] on the alleged

- 4 -

claims in the complaint, leaving only the limited issue of damages to be determined at a future proceeding.

On September 3, 2024, [Appellees] filed an omnibus praecipe for arbitration, hearing, or trial, requesting a trial on the remaining issue of damages. On September 12, 2024, the Honorable President Judge Raymond F. McHugh issued a pre-trial order, scheduling the matter for the October 21, 2024 through November 1, 2024 trial term. The pre-trial order required that the parties meet for a pre-trial discussion and file pre-trial memoranda within ten [] days of the date of the order. The pre-trial order outlined certain required sections for the pre-trial memoranda and specified as follows: "failure to comply with these procedures may result in the exclusion from trial evidence not disclosed at this time, preclusion from conducting voir dire, or the imposition of attorneys' fees and costs." [Appellants] failed to file their required pre-trial memorandum.

[Appellees] filed a motion for continuance on October 11, 2024, indicating, *inter alia*, that [Appellees] recently discovered additional defects and damages to the Property which created the need for an expert report to adequately present and support their damages claims. [Appellees] also noted that [Appellants] had been served and notified of all proceedings but had not responded or engaged in the litigation in any way. On October 18, 2024, the court issued an order granting the request and continuing the matter to the December 2024 trial pool.

On October 24, 2024, President Judge McHugh issued a second pre-trial order, scheduling the matter for the December 2, 2024 to December 13, 2024 trial term and outlining the same requirements as noted above. The Honorable Jeffrey G. Trauger issued an additional pre-trial order for [a nonjury] waiver trial on October 28, 2024, requiring that on or before November 25, 2024, the parties were to file a joint stipulation of facts not in dispute, as well as memoranda of law on any remaining legal issues. In accordance with the pre-trial requirements, [Appellees] timely filed a pre-trial memorandum on November 4, 2024. [Appellants] again failed to file anything.

On November 21, 2024, the undersigned issued two pre-trial orders. The first order indicated that [Stateside], as a corporate entity, could not participate in the trial on damages without being represented by counsel and that the trial may proceed in [its]

absence. The second order scheduled trial to begin on December 6, 2024, at 11:30 a.m.

[Appellees], seeking to fulfill the requirements of [the] second pre-trial order, filed a proposed stipulation of undisputed facts on November 25, 2024, stating that they had been unable to confer with [Appellants] for the purpose of arriving at a joint stipulation, as required by the court's order.

On December 3, 2024, [Appellees] filed a second motion for continuance, indicating that the expert witness they had retained continuously delayed meeting his obligations, ultimately quitting a mere three [] days prior to the scheduled trial without producing any deliverables.

The court issued an order that same day, granting the second continuance request, rescheduling the matter to the February 2025 trial pool, and noting that no further continuances would be granted.

On December 23, 2024, President Judge McHugh issued a third pre-trial order, listing the matter in the February 2025 trial term and requiring, again, that the parties file pre-trial memoranda within ten [] days. Again, [Appellees] timely filed a pre-trial memorandum and, again, [Appellants] did not.

The [trial court] issued a final pre-trial order on January 29, 2025, scheduling the bench trial for February 12, 2025, at 9:30 a.m.

It was not until February 6, 2025—the Thursday before trial was set to begin—that defense counsel entered his appearance on behalf of both [Appellants]. That same day, [Appellants]' counsel filed a motion for continuance, despite the order of December 3, 2024, which directed that no further continuances would be granted. The court issued an order on February 7, 2025, denying [Appellants]' continuance request.

Then, at 8:30 p.m. on February 11, 2025—literally the eve of trial—[Appellants] filed a petition to open and/or strike the default judgments.

Trial began, as scheduled, on February 12, 2025, and [Appellants]' pattern of failing to participate in good faith continued. [Appellants]' counsel appeared for the trial, but Beebie did not.

At the outset, [Appellants]' counsel made a second continuance request, informing the court that Beebie was not present for trial because he was allegedly subpoenaed to appear in a criminal case in Philadelphia. [Appellants]' counsel also addressed the petition to open and/or strike the default judgments, filed the evening before. [Appellees]' counsel had not yet been made aware of the petition at the start of the trial.

In the petition, [Appellants] claimed, remarkably, that they were not aware of the need to participate in the litigation prior to trial. [Appellants] made this incredulous claim despite the docket reflecting that the complaint was endorsed with a notice to plead; despite the fact that the praecipes to enter default judgment that were filed in July 2024 reflect that [Appellants] were served with the requisite ten [] day notices advising them of what would happen if they failed to respond; and despite the fact that the docket reflects three [] rounds of pre-trial orders, each of which described the issue before the court and the pre-trial requirements of the parties.

The court orally denied both [Appellants]' last-minute motion for continuance and the petition to open and/or strike the default judgments. As the court noted on the record, the petition to open and/or strike: [(1)] was untimely, in that it was filed nearly seven [] months after the default judgments were entered; [(2)] failed to meet the standards of a meritorious defense sufficient to open the judgments; and [(3)] was not properly verified, as it contained an attorney verification—an improper one at that—as opposed to a verification from Beebie. Furthermore, the court found any claims that [Appellants] were unaware of their need to respond and participate in the litigation process to be [non]credible. Ignoring litigation does not make it go away, nor does it erase one's obligations to abide by rules and directives of the court.

The trial proceeded and [Appellees] presented evidence regarding their damages. When the time came for [Appellants] to present their side of the case, around 3:30 p.m., Beebie still had not appeared. [Appellants]' counsel reported that he had reached Beebie by phone, who claimed that he was still in Philadelphia. [Appellants] rested without presenting any evidence and [Appellants]' counsel requested the opportunity to present closing arguments to the court in writing.

The court agreed to receive written closing arguments, which the parties submitted to the chambers of the [trial judge] on March 6, 2025.[3]

> [3] The court initially provided counsel with a February 27, 2025 deadline for the submission of written closing arguments—two [] weeks following the trial. However, on the day of the deadline, counsel for [Appellants] requested an extension due to the birth of counsel's son the day prior, which the court granted in light of the circumstances.

On March 11, 2025, the [trial court] issued a verdict and order [] that awarded [Appellees] $1,143,619.93 and found [Appellants] jointly and severally liable for the award.

On March 21, 2025, [Appellants] timely filed a motion for post-trial relief (the "Post-Trial Motion") pursuant to Pennsylvania Rule of Civil Procedure 227.1. The Post-Trial Motion argued, in part, that the verdict was against the weight of the evidence and/or not supported by sufficient evidence regarding piercing the corporate veil and that [Appellees] had not met their burden of proving that they were damaged by the actions or inactions of Beebie, individually. The Post-Trial Motion requested that the court enter an order modifying the verdict by revising the damages assessed against Beebie, individually, to simply a nominal amount. Finally, the Post-Trial Motion sought further modification of the verdict in order to specify which of the eight [] claims in the complaint resulted in the verdict's damages finding.

The undersigned issued an order on March 24, 2025, outlining the procedure that would be followed regarding the Post-Trial Motion. As part of the order, the parties were required to immediately contact the court reporter to purchase a copy of the trial transcript, file their initial post-trial briefs on or before May 22, 2025, file reply briefs by June 12, 2025, and participate in oral argument on June 27, 2025. The order specified as follows:

> the parties shall, with respect to each issue raised, identify how and when each issue and/or claim of error was preserved pursuant to [Pennsylvania Rule of Civil Procedure] 227.1, with citations to the record (page numbers of the transcript). Failure to specify the grounds for relief or how and when each issue and/or claim of error was preserved, will result in waiver of the claim(s), and denial of post-trial relief.

On April 7, 2025, [Appellees] initially filed a response in opposition to the [Post-Trial Motion], followed by an additional brief in response and opposition to the Post-Trial Motion on May 22, 2025. [Appellees]' opposition brief included the trial transcript, which [Appellees] had purchased pursuant to the March 24, 2025 order.

[Appellants] failed to contact the court reporter to purchase the trial transcript and failed to file an initial brief by the May 22, 2025 deadline. As a result, the court issued an order on May 27, 2025, denying [Appellants]' Post-Trial Motion, and deeming the issues raised in the motion waived and abandoned due to [Appellants]' overall failure to comply with the requirements of the March 24th order. The May 27th order is the first order subject to the instant appeal.

On May 28, 2025, [Appellants] filed a motion to reconsider the May 27th order. [Appellants]' counsel stated the following reasons for the failure to file a brief by the May 22, 2025 deadline:

2. [Appellants'] failure to file a brief on or before May 22, 2025, was a result of error and confusion on counsel's part.

3. Specifically, when the March 24, 2025[] order was entered by the court, [Appellants' counsel] saw the docket text that oral argument was scheduled for June 27, 2025, at 1:30 p.m. [Counsel] was unaware of the remaining briefing requirements in the order. In addition, as a result of staffing changes at [counsel's] office, the relevant deadlines did not make it onto [Appellants' counsel's] calendar.

4. [Counsel] first saw the briefing requirements today, after receiving the court's order denying post-trial relief. [Counsel] received a copy of [Appellees'] brief on the morning of Friday, May 23, 2025, but did not have the time to review it fully given the holiday weekend and [counsel's] schedule upon returning to the office on Tuesday.

5. [Counsel] ha[s] now reviewed the court's March 24, 2025, order, in full. A review of the order demonstrates that briefs were due on May 22, 2025. Reply briefs are due on June 12, 2025. Oral argument was to take place on June 27, 2025 at 1:30 [p.m.[4]]

_____
[4] Paragraph five [] includes a footnote that states: "The email notification received when the court efiled

- 9 -

its March 24, 2025, order clearly states that oral argument is scheduled for June 27, 2025, at 1:30 [p.m.], which counsel calendared. The notification does not make reference to the remaining portions of the order. Normally, the order is downloaded, in full, by a representative of [counsel's] office, the relevant dates are calendared, and a copy is sent directly to [counsel] for review. Around the time of the March order, there were significant staffing changes in [Appellants' counsel's] office in the legal assistant role. For unknown reasons, the only date from the March order that is calendared and acknowledged in [Appellants' counsel's] records is the June 27, 2025 oral argument date."

On May 29, 2025, [Appellees] filed a response in opposition to [Appellants]' motion for reconsideration. On May 30, 2025, the [trial court] issued an order denying the motion for reconsideration.[5] This is the second order subject to the instant appeal.

> [5] On the same day, [Appellants] filed a late post-trial brief, without seeking or obtaining leave of court for their late filing.

As of [August 25, 2025], final judgment has not been entered on the trial court docket.[1]

On June 26, 2025, [Appellants] filed a notice of appeal, listing the May 27, 2025 order, which denied their [Post-Trial Motion], and the May 30, 2025 order, which denied their motion for reconsideration of the May 27, 2025 order. On July 9, 2025, upon receipt of the notice of appeal, the court ordered that [Appellants] file a concise statement of matters complained of on appeal within

_____

[1] This Court issued a rule to show cause why the appeal should not be quashed on August 15, 2025, based on the lack of judgment entered. Appellants responded on August 28, 2025, that they obtained the entry of judgment in the trial court, which was effectuated on August 27, 2025. Thereafter, we discharged our rule to show cause. We have jurisdiction to review the appeal taken after the denial of post-trial motions but prior to entry of judgment where judgment was thereafter entered and the appeal perfected. *See Jones v. Rivera*, 866 A.2d 1148, 1149 n.1 (Pa. Super. 2005); *see also* Pa.R.A.P. 905(a)(5).

twenty-one [] days, pursuant to Pennsylvania Rule[] of Appellate Procedure [] 1925(b).

Trial Court Opinion, 8/25/25, at 2-12 (headings, internal citations, brackets, unnecessary capitalization, some quotation marks, and some footnotes omitted). Appellants filed a timely court-ordered Rule 1925 concise statement.

On appeal, Appellants present the following six issues for our review:

I.    Did the trial court commit error by deeming [Appellants]' requests for post-trial relief waived when the post-trial motion complied with Rule 227.1 in all material respects?

II.   Did the trial court abuse its discretion when it denied [Appellants]' motion for reconsideration and refused to consider [their] late filed brief in support of [their] post-trial motion?

III.  Did the trial court err by awarding damages against [] Beebie when the evidence presented at trial established that [Appellees] were solely damaged by [] Stateside?

IV.   Should the trial court's verdict be limited to a damages finding of only $566,921.03 because [Appellees'] claims sound in contract and the other causes of action pled in the complaint are barred by the gist of the action doctrine?

V.    Did the court err in denying [Appellants]' request for post-trial relief and refusing to modify the verdict when it was not clear from the verdict from which causes of action damages stemmed?

VI.   Did the court err by denying [Appellants]' oral motion for a continuance because [they] were unavailable due to a duly issued subpoena in a separate action?

Appellant's Brief, at 6-7 (suggested answers and unnecessary capitalization omitted).

In Appellants' first issue, they argue that the trial court improperly found waiver of the issues raised in their Post-Trial Motion where Appellants failed to file an accompanying brief as ordered. Notably, Appellants, Appellees, and the trial court all cite to the Pennsylvania Supreme Court's decision in **Board of Supervisors of Willistown Township v. Main Line Gardens, Inc.**, 155 A.3d 39 (Pa. 2017), in support of their positions and ruling, respectively. In this regard, Appellants specifically argue that because they complied with the requirements of Rule 227.1, the result in **Bd. of Supervisors of Willistown Twp.** requires reversal in this case. **See** Appellants' Brief at 21. Conversely, Appellees cite to the same precedential case but distinguish its facts by highlighting that the instant case is materially different insofar the trial court specifically ordered briefs in support of Appellants' post-trial motion where none was ordered in **Bd. of Supervisors of Willistown Twp. See** Appellees' Brief, at 21-22. Further, Appellants rely on **Schultz v. Celotex Corp.**, 669 A.2d 404 (Pa. Super. 1996), and **Carlos R. Leffler, Inc. v. Hutter**, 696 A.2d 157 (Pa. Super. 1997). **See** Appellants Brief, at 19, 23. Moreover, Appellants attempt to distinguish **Jackson v. Kassab**, 812 A.2d 1233 (Pa. Super. 2002) (*en banc*), insofar as, in **Jackson**, the "failure to brief and argue [] post-trial motions resulted in the trial court being deprived of its opportunity to address the merits of [the] post-trial contentions," **Jackson**, 812 A.2d at 1235, but in the instant case, "the trial court had a full opportunity to address the merits of [Appellants'] Post-Trial Motion based on [Appellants'] full compliance with

Rule 227.1," Appellants' Brief, at 21. We find no relief is due on this first issue.

We begin by noting our standard of review for challenges to a trial court's finding of waiver: "The applicability of waiver principles presents a question of law, over which our standard of review is *de novo*. Additionally, for the application of the waiver doctrine, our scope of review is plenary." ***Temple v. Providence Care Ctr., LLC***, 233 A.3d 750, 760 (Pa. 2020) (citations, quotation marks, brackets, and ellipsis omitted).

As to the case law cited above, in ***Bd. of Supervisors of Willistown Twp.***, the Pennsylvania Supreme Court confronted the question of whether the Commonwealth Court correctly found waiver of the issues presented in a post-trial motion due to a failure to file a brief in support of that motion, based on a failure to adhere to requirements of a local rule. ***See Bd. of Supervisors of Willistown Twp.***, 155 A.3d at 40-41. In that case, where there was no specific trial court order regarding post-trial motion briefs and no trial court finding of waiver, the Pennsylvania Supreme Court concluded that it was error for the Commonwealth Court to find waiver on those bases. ***See id.*** at 45. Nevertheless, in that decision, the Pennsylvania Supreme Court specifically explained that trial courts may order the filing of briefs in connection with the filing of post-trial motions and may also find waiver of the issues presented in the post-trial motion, in the court's discretion, due to a failure to comply with the post-trial briefing order. ***See id.*** ("Because Rule 227.1(b)(2) does not require supporting briefs, the failure to file a brief does not violate the rule,

and neither the trial court nor the appellate courts may find waiver pursuant to the rule for failing to do so. **In its discretion**, based upon its conclusion that it requires further advocacy on the issues, **a trial court may request that the parties file briefs. In the event of non-compliance with such a request, it is for the trial court, again in its discretion, to find waiver** or, alternatively, to overlook the non-compliance and rule on the merits of the issues presented.") (emphasis added).

Instantly, the trial court, in citing to *Bd. of Supervisors of Willistown Twp.*, reasoned that Appellants' failure to file a court-ordered brief waived the issues in their post-trial motion as follows:

> In accordance with [] Pennsylvania Rule of Civil Procedure 1037(b)(1), following the entry of default judgments in favor of [Appellees] and against [Appellants] for failure to respond to the complaint, the undersigned held a non-jury trial on February 12, 2025, on the limited issue of assessing monetary damages. Based on the well-pleaded facts in the complaint, which were deemed admitted in light of the default judgments, as well as the unrebutted evidence introduced at trial, at which Beebie failed to appear,[2] the court issued a verdict awarding [Appellees] $1,143,619.93 and finding Stateside and Beebie jointly and severally liable for the award.
>
> Although [Appellants] timely filed a motion for post-trial relief, they failed to comply with the [trial] court's subsequent order on March 24, 2025, which directed the parties to purchase the trial transcript and file initial briefs by May 22, 2025, identifying how and when each issue/and or claim of error was preserved, with citations to the record, including page numbers of the transcript. [Appellants]' failure to comply with the court's order was part of an unmistakable pattern of disrespect toward the court's requirements. Both literally and figuratively, [Appellants] never

---

[2] Although Beebie did not attend the damages trial, his counsel did.

showed up. They never answered the complaint, did not cooperate in the litigation in any way, failed to timely engage counsel for Stateside, failed to timely challenge the default judgments, failed to file any of the required pre-trial memoranda, failed to appear for the hearing on [Appellees]' motion for emergency injunctive relief, failed to appear at the trial to assess damages, failed to rebut [Appellees]' case in anyway, and ultimately failed to follow the court's post-trial directions to order the trial transcript and file a timely post-trial brief.

In accordance with the court's March 24th order, and in the exercise of [the trial] court's discretion, the court determined that [Appellants]' noncompliance constituted waiver of their post-trial claims.

Trial Court Opinion, 8/25/25, at 21 (citations and unnecessary capitalization omitted).

After our review, we find no abuse of discretion or error of law in the trial court's finding of waiver. *See Temple*, 233 A.3d at 760; *see also Bd. of Supervisors of Willistown Twp.*, 155 A.3d at 45. Here, importantly, the trial court ordered briefing in connection with Appellants' Post-Trial Motion and found waiver, in its discretion, when Appellants failed to comply with that briefing order, as the court may do. *Cf. Bd. of Supervisors of Willistown Twp.*, 155 A.3d at 46. Further, we find the other cases relied upon by Appellants to be inapposite as there is no local rule at issue in this case, *cf. Schultz*, 669 A.2d at 404-05 (concluding Pa.R.Civ.P. 239(f) prohibits dismissal of civil actions for failure to comply with local rules other than those promulgated under Pa.R.J.A. 1901), nor is this an instance of minimal noncompliance, as the trial court noted the myriad ways in which Appellants have failed to participate in the litigation despite the appropriate notices and

orders to do so.[3] ***Cf. Carlos R. Leffler, Inc.***, 696 A.2d at 167 (reversing finding of waiver where one filing deadline missed by one day due to inclement weather). Also, Appellants' argument in reliance on ***Jackson*** is inapplicable because any alleged compliance with Rule 227.1 becomes a secondary consideration where, as here, the trial court ordered the parties to file briefs, but Appellants failed to comply. ***See Bd. of Supervisors of Willistown Twp.***, 155 A.3d at 45. Accordingly, we find the trial court properly found the issues presented in Appellants' Post-Trial Motion waived, and no relief is due on Appellants' first issue.

As a result of the above finding of waiver of Appellants' issues as presented in the Post-Trial Motion, Appellants' remaining issues on appeal are not preserved for appellate review.[4] ***See, e.g.***, ***Lane Enterprises v. L. B. Foster Co.***, 710 A.2d 54, 54-55 (Pa. 1998) (noting that issues not raised in post-trial motion are waived for appellate review); ***see also Krystal Development Corp. v. Rose***, 704 A.2d 1102, 1103 (Pa. Super. 1997) (explaining no issues preserved for appellate review without timely filed post-trial motions after non-jury trial); ***see also*** Pa.R.Civ.P. 227.1(b)(2) ("Except

_____

[3] We recognize that Appellants participated in the damages trial and filed documents as reflected in the docket and outlined by the trial court above.

[4] We find Appellants' second issue waived because Appellants failed to separately dedicate argument in their appellate brief on this issue. ***See J.J. Deluca Co. v. Toll Naval Assocs.***, 56 A.3d 402, 411 (Pa. Super. 2012) (finding waiver of claim pursuant to Pa.R.A.P. 2119 for failure to separately set forth claim and argument related thereto in brief).

as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor[] are specified in the [post-trial] motion. The [post-trial] motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds."). Accordingly, no relief is due in this appeal.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/18/2026